UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT YEAGER,

    Plaintiff,

v.

FORD MOTOR COMPANY; GOSCH FORD TEMECULA; and DOES 1 through 10, inclusive,

    Defendants.

No. C 19-06750 WHA

**ORDER REMANDING ACTION TO STATE COURT**

**INTRODUCTION**

This is an automobile "Lemon Law" case brought under California law. Defendants removed. Plaintiff seeks remand. The crux is whether an in-state defendant was fraudulently joined. Finding recovery against the in-state defendant is possible, the motion to remand is **GRANTED**.

**STATEMENT**

Plaintiff purchased a Ford F-250 pickup truck in May 2014 from defendant Gosch Ford Temecula. The truck came covered by a three-year/36,000-mile express bumper-to-bumper warranty and a five-year/60,000-mile powertrain warranty (First Amd. Compl. ¶ 8).

During the warranty period, multiple defects developed. In June 2014, plaintiff brought the truck to Gosch over excessive wobble while driving. Gosch's technicians measured the truck's tires, noted their good condition, and sent plaintiff on his way (*id.* ¶ 14).

He returned less than a month later with an illuminated check-engine light. Gosch technicians ran diagnostic tests, including a scan for fault codes that indicated an exhaust-gas-temperature sensor failure. Using the repair procedure outlined in a Ford technical service bulletin, a technician replaced the sensor. During the visit, plaintiff repeated his excessive wobble concerns (*id.* at ¶ 15).

During a routine maintenance visit in October 2014, Gosch replaced "exhaust emission control" parts, according to records from the visit. No further notes were made (*id.* ¶ 16).

Five months later, plaintiff brought the truck in over excessive wobble for the third time. On this visit, Gosch technicians identified the wobble issue as a repeat concern, contacted Ford's technical hotline, and replaced the truck's tires (*id.* ¶ 17).

A month later, still within a year of purchase, the engine cranked, but failed to start. Plaintiff towed his truck back to Gosch. The technicians ran diagnostic tests and determined that the complete fuel system needed replacement. The technicians also reprogrammed the power control module and programmed new fuel-injector related codes (*id.* ¶ 18). Gosch represented that the truck had been repaired when plaintiff picked it up.

Plaintiff returned three more times. In April 2016, the primary radiator needed replacement following a coolant leak. In January 2018, the check-engine light illuminated, the camera ceased to work, and the coolant tanks needed flushing. In September 2018, the check-engine light came back on and Gosh technicians performed further repairs involving the exhaust system, as prescribed by a different technical service bulletin. Gosch continued to tell plaintiff the issues were repaired (*id.* ¶ 19, 20, 21).

Later, however, plaintiff learned that a part installed in his truck, the Ford CP4 high-pressure fuel-injection pump, suffered a common defect that leads to various problems, such as deposits of metal shavings and debris in the fuel injection system, sudden engine failure, no start, and rough running (*id.* ¶¶ 49, 65). When he learned of defendants' wrongful conduct in February 2019, plaintiff requested that defendants repurchase or replace the vehicle. Defendants refused (*id.* ¶ 65).

1    On September 12, 2019, plaintiff filed this action in state court claiming various
2 violations of California's Song-Beverly Consumer Warranty Act. Against Gosch, plaintiff
3 alleged only a breach of the implied warranty of merchantability under the Song-Beverly Act.
4 All defendants removed. Plaintiff filed the first amended complaint on November 18.

Plaintiff now moves for remand. This order follows full briefing, extended oral argument, and supplemental briefing following the hearing (Dkt. Nos. 31, 32).

**ANALYSIS**

A defendant may remove a case to federal court under diversity jurisdiction if the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. 1332, 1441. But, the defendant bears the burden to prove the circumstances supporting removal jurisdiction. There is a "strong presumption against removal jurisdiction" and all ambiguity is resolved in favor of remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

Although complete diversity is required under Section 1332, district courts may ignore the fraudulent joinder of nondiverse defendants in determining whether diversity jurisdiction exists. There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *GranCare, LLC, v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). The bar is high; a plaintiff's inability to recover against the non-diverse party must be "*obvious* according to the settled rules of the state." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "If there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F. 3d at 1046. And, a "district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting plaintiff leave to amend*.*" *GranCare*, 889 F.3d at 550.

Defendants contend that plaintiff's implied-warranty claim against Gosch is hopeless because it is barred by the statute of limitations. Not so.

The Song-Beverly Consumer Warranty Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail

3

seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The Act does not have its own statute of limitations. Instead, Section 2725 of California's Commercial Code applies for all violations of the Act. *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1305–06 (2009). Section 2725 provides:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Unlike the Commercial Code, under which the implied warranty could be breached only at the time of delivery, the Song-Beverly Act's implied warranty is "coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warranty have a duration of . . . more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). "[B]y giving the implied warranty a limited prospective existence beyond the time of delivery, the Legislature created the possibility that the implied warranty could be breached after delivery." *Mexia*, 174 Cal. App. 4th at 1309.

At oral argument, defense counsel agreed that the duration of the implied warranty here was one year but insisted that the claim for relief still accrued at the time of purchase. Even if counsel is wrong and plaintiff could tack on a year to the four-year limitations period, that is insufficient. Plaintiff brought this action more than five years after purchase.

The issue is whether a purchaser can sue more than five years after the purchase on the theory that a latent defect lurked within the vehicle not reasonably discoverable by him until after the year ran such that the four-year limitations period began only upon discovery.

The answer is yes. The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale. *Mexia*, 174 Cal. App. 4th 1297, 1304, 1308–10 (2009). Section 1791.1 does not create a one-year deadline for discovery of the defect. *Ibid.*

4

Where a latent defect exists, the statute of limitations is tolled "until the plaintiff discovers, or has reason to discover, the cause of action[.]" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005).

Defendants claim plaintiff is wrong on the applicable law (Dkt. No. 20 at 7). In doing so, defendants do not mention *Mexia*, let alone provide any California authority that disapproves of *Mexia*. Defendants do address an earlier decision that also seemingly applied a delayed-discovery theory to an implied warranty claim, *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991), but again, defendants fail to provide any California authority that disapproves of or overrules *Krieger*. No such decision exists. Instead, defendants provide a collection of district court decisions that conclude that *Krieger* was an outlier. These decisions are all unavailing. The question, as our court of appeals has pointed out, is whether California law — not federal courts' interpretation of California law — obviously forecloses plaintiff's claim. *See GranCare*, 889 F.3d at 550.

Notably, our court of appeals reversed a district court decision granting summary judgment because the district court declined to follow *Mexia*'s holding that latent defects may breach the implied warranty even when the defects are not discovered within the implied warranty's duration. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222–23 (9th Cir. 2015). In so doing, *Daniel* expressly recognized the mixed treatment district courts have given *Mexia*. *Daniel* concluded that "we must adhere to state court decisions — not federal court decisions — as the authoritative interpretation of state law." *Id.* at 1223.

So too here.

The one California decision defendants rely on to support their position is *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116 (2008). *Cardinal Health* addressed the "future-performance exception" of Section 2725, which provides that an implied-warranty claim may accrue upon discovery instead of delivery if the warranty in question "explicitly extend[s] to future performance of the goods." Comm. Code § 2725. The dispute, importantly, arose in the context of a commercial sale. The Commercial Code, not the Song-Beverly Act, governed. The distinction matters here. Because implied warranties arise

5

by law, as defendants assert, they are limited by their statutory definition. The Commercial Code does not write in a prospective existence for the implied warranty of merchantability that it provides (Comm. Code § 2314), so, as *Cardinal Health* explains, an implied-warranty claim under the Commercial Code accrues at the time of the sale. The Song-Beverly Act, in a departure from the Commercial Code, writes in a prospective existence for implied warranties governed by the Act, allowing for the claim to accrue later, upon discovery. *Mexia*, 174 Cal. App. 4th at 1309. *Mexia* was decided after *Cardinal Health* and cites *Cardinal Health* without disapproval. Defendants do not explain why *Cardinal Health* rather than *Mexia* applies here. Defendants do not mention *Mexia* at all. The omission is telling.

When pressed on *Mexia* during oral argument, defense counsel decided to address *Krieger* instead, never returning to *Mexia*. This order pauses to note that at the hearing, supplementary briefing was ordered to address an unrelated issue. After quickly conceding the issue in its brief, defendant decided to use the allotted pages to rehash its statute of limitations argument. This time, however, for the first time ever, defendants cited *Mexia*. Nevertheless, it was to no avail. Defendants cited *Mexia* to support their contention that "as a matter of law, the 'discovery rule' does not apply to claims for breach of implied warranty" (Dkt. No. 32 at 2). To the contrary, "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." *Mexia*, 174 Cal. App. 4th at 1304.

The binding California precedent here is *Mexia*: Plaintiff can sue more than five years after the purchase on the theory that a latent defect lurked within the vehicle not reasonably discoverable until after the year ran such that the four-year limitations period began only upon discovery. The first amended complaint alleges that discovery was in or around February 2019, because, among other reasons, Gosch represented that the repairs had fixed the problems and plaintiff had relied on those representations (First Amd. Compl. ¶¶ 60, 65).

Defendants do not address these allegations and thus fail to meet their burden of showing that California law *obviously* forecloses plaintiff's claim against Gosch. This order need not and does not reach plaintiff's other tolling theories. The action must be remanded. *Hunter*, 582 F.3d at 1046.

In a last-ditch effort, defendants assert that even if this order finds that the dealership was not fraudulently joined, the undersigned should exercise his discretion under Rule 21 to dismiss the dealership anyway, in order to "preserve" or "perfect" federal jurisdiction, because plaintiff can obtain complete relief from Ford (Dkt. No. 20 at 13–14). Ford's only support for this argument is a district court decision denying joinder of a new defendant *after* removal where the proposed party would destroy complete diversity (Dkt. No. 20 at 14, citing *Keledjian v. Jabil Circuit, Inc.*, 2017 WL 3437652 (S.D. Cal. Aug. 10, 2017) (Judge Michael Anello)). The question here is whether removal was authorized, not whether the district judge should tidy up the party alignment. If removal was improper — as it surely was — then remand is compulsory and there is no occasion or jurisdiction to tidy up the pleadings on a *nunc pro tunc* basis or any other basis.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is **GRANTED**. This order does not bless plaintiff's allegations or conclude that his claim against Gosch was timely brought. It may well be that plaintiff should have discovered the breach earlier or even that California courts will abandon *Mexia*. These decisions, however, are for a California state court to decide. Defendants' motions to dismiss (Dkt. Nos. 22, 23) are deemed as moot without prejudice to renewal by way of demurrer on remand. The clerk shall please **CLOSE THIS FILE**.

The Court will retain jurisdiction to determine whether attorney's fees should be awarded after the forty-two other actions removed by Ford under similar circumstances and randomly assigned within our district have run their course.

**IT IS SO ORDERED.**

Dated: January 8, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7